IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| RIDINGS AT BRANDYWINE ASSOCIATES, LP,<br><br>       Plaintiff-Appellant,<br><br>   v.<br><br>CITIZENS BANK,<br><br>       Defendant-Appellee. | Civil No. 08-2788 (RMB)<br><br>**OPINION** |

Appearances:

Aris J. Karalis
    Maschmeyer & Karalis, PC
    413 Route 70 East, Suite 300
    Cherry Hill ,NJ 08034
        Attorney for Plaintiff-Appellant, Ridings at Brandywine
        Associates, LP

Stephen McNally
    Harvey & Pennington, PC
    Cherry Treet Corporate Center
    535 Route 38 East, Suite 360
    Cherry Hill, NJ 08002
        Attorneys for Defendant-Appellee, Citizens Bank

**BUMB**, United States District Judge:

    This matter comes before the Court upon appeal by Ridings at Brandywine Associates, LP ("Ridings" or "Debtor"), of the Bankruptcy Court's Order, dated April 24, 2008, granting the motion of Citizens Bank ("Citizens") to dismiss Riding's Complaint with prejudice.

1

## I. BACKGROUND

The facts in this case are undisputed. On June 24, 2005, Ridings purchased a parcel of land known as the "Ridings at Brandywine" development ("the Property"). The purchase was financed by a mortgage and promissory note in the amount of $10,625,000 which was executed by Ridings and granted to Citizens Bank on June 24, 2005. In connection with the sale, Ridings also executed a Construction Loan Agreement and Note in the amount of $6,098,256. To secure the loans, Ridings delivered to Citizens an Open End Mortgage and Security Agreement encumbering the Property. Ridings recorded its deed on June 29, 2005 but Citizens did not record its mortgage until June 7, 2006, almost a year after the transaction.

On June 10, 2007, Ridings filed a voluntary petition under Chapter 11 of the Bankruptcy Code. As of June 30, 2007, approximately six million dollars was due and owing to Citizens Bank on the two loans.

On November 19, 2007, Ridings (now the "Debtor") filed a two-count adversary complaint seeking to avoid the mortgage on the Property held by Citizens. In Count One, the Debtor sought a declaratory judgment ruling that Citizens' mortgage was null and void pursuant to 21 P.S. § 351 ("§ 351") and/or 21 P.S. § 444 ("§ 444") and reclassifying it as an unsecured claim. Specifically, the Debtor contended that under § 444, all deeds and mortgages

must be filed within 90 days of execution or else they are deemed fraudulent and void as to any subsequent bona fide purchaser. Because Citizens recorded its mortgage almost a year after the execution, the Debtor argued that the mortgage was void. In Count Two, the Debtor asserted that under 11 U.S.C. § 544(a)(3) ("§ 544"), it could assume the position of a hypothetical bona fide purchaser of real property for value without notice and, thus, avoid the Citizens mortgage.

On January 18, 2008, Citizens filed a motion to dismiss the Debtor's adversary complaint. Citizens argued that § 351 returned Pennsylvania to a "race-notice" system, thereby repealing the 90 day deadline embodied in § 444. Thus, Citizens concluded that because it recorded the mortgage a year before the Debtor filed the bankruptcy petition, Citizens satisfied § 351. Moreover, Citizens contended, to the extent § 444 still applies, it contains an implicit notice exception, meaning that the 90 day requirement would not apply where the subsequent purchaser had either actual or constructive knowledge of the prior interest. Accordingly, Citizens claimed that the Debtor, even assuming the status of a hypothetical bona fide purchaser without actual knowledge under § 544 of the Bankruptcy Code, had constructive knowledge of Citizens' previously recorded mortgage and, therefore, could not avoid it.

On February 11, 2008, a hearing was held in front of Judge

Wizmer of the Bankruptcy Court. On April 24, 2008, Judge Wizmer issued an opinion granting Citizens' motion. Judge Wizmer found that § 351 returned Pennsylvania to a "race-notice" system and, thus, "the Citizens Bank mortgage, recorded before the debtor gained bona fide purchaser status at the time of the bankruptcy filing, has priority over the debtor's claim." (Bankr. Op. at 14). Furthermore, Judge Wizmer explained that "[m]any Pennsylvania cases have found an implicit exception to the section 444 consequence ... where the purchaser has actual or constructive notice of the interest at the time of the purchase." (Id.). Thus, the Bankruptcy Court granted Citizens' motion to dismiss the Debtor's adversary complaint. The Debtor now appeals Judge Wizmer's ruling.

## II. STANDARD OF REVIEW

An appellate review of a bankruptcy court's factual findings is performed under a "clearly erroneous" standard. In re F/S Anlease II, Inc., 844 F. 2d 99. 103 (3d Cir. 1988). Findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy judge to judge the credibility of the witnesses." Bankr. Rule 8013. A finding is considered "clearly erroneous" when, "although there is evidence to support it, the viewing court on the entire evidence is left with a definite and firm conviction that a

mistake has been committed." In re Johns Manville Corporation, 68 B.R. 155 (S.D.N.Y. 1986) (quoting U.S. v. U.S. Gypsum Co., 33 U.S. 364, 395 (1948)).  As to the issues that relate to the bankruptcy judge's application of the law to undisputed facts, those conclusions are "subject to plenary review." In re Johns Manville, supra, 68 B.R. at 158.

### III.  ANALYSIS

### Return to Race Notice Recording System Under §351

To begin, the Court must determine whether the Bankruptcy Court correctly determined that Pennsylvania is governed by a race notice recording system.  This requires an examination of the two relevant Pennsylvania recording statutes:  § 444 and § 351.

Section 444  was first enacted in 1775 and subsequently amended in 1893 and 1955.  The current version provides, in relevant part,

> [a]ll deeds ... shall be recorded ... within ninety days after the execution ... and every such deed ... which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valid consideration...

21 P.S. § 444 (emphasis added).  Thus, on its face, § 444 institutes a 90 day recording requirement.

Section 351 was enacted in 1925.  It provides, in relevant part,

> [a]ll deeds ... shall be recorded... Every such deed ... which shall not be ... recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser ... without actual or constructive notice <u>unless such deed ... shall be recorded, as aforesaid, before the recording of the deed ... under which such subsequent purchaser ... shall claim</u>.

21 P.S. § 351 (emphasis added). Thus, § 351 does not contain a 90 day requirement and, instead, includes a "savings provision" which gives priority to the instrument that is filed first. Accordingly, it appears that § 444 and § 351 conflict.

The Bankruptcy Court examined the legislative history of both § 444 and § 351, the Pennsylvania courts' interpretation of these recording statutes, and the commentary to Title 21 of Purdon's Statutes, which specifically analyzes the interaction between these statutes. After an in-depth analysis of these authorities, Judge Wizmer ruled that the savings provision in § 351 effectively converted Pennsylvania to a race notice recording system, which grants priority to the instrument that is filed first. (Bankr. Op. at 12).

This Court agrees with the Bankruptcy Court's analysis. Based on the legislative history, Pennsylvania case law, and statutory commentary, there can be no doubt that under § 351, Pennsylvania now operates under a race notice recording system. As explained in <u>United States v. Purcell</u>, 798 F. Supp. 1102, 1116 n.6 (E.D. Pa. 1991), "the later recording statute modified the existing recording statute to convert Pennsylvania to a 'race

6

notice' system where the validity of deeds depends upon notice and the chronological priority of recording." Moreover, as Judge Wizmer pointed out, the Third Circuit has also acknowledged Pennsylvania's return to a race notice system:

> Pennsylvania law gives subsequent purchasers of real property priority over the rights of prior purchasers if the subsequent purchasers are bona fide purchasers for value without notice. Record notice defeats the claims of a subsequent purchaser.

McCannon v. Marston, 679 F.2d 13, 15 (3d Cir. 1982). This interpretation is further supported by the statutory commentary examining the interaction between § 444 and § 351. The commentary explains that since the enactment of § 351, "the validity of all deeds executed within the State depends, as against bona fide purchasers, etc. without notice, upon the chronological priority of recording." P. Nicholson Wood, "Deeds of Conveyance in Pennsylvania," Commentary to 21 P.S. (Purdon's 1955) (emphasis added). Although, as Judge Wizmer noted, "the commentary does not have the force of law," it supports the interpretations given in McCannon and Purcell. (Bankr. Op. at 13). Given these authorities, this Court finds that the Bankruptcy Court correctly determined that under § 351, Pennsylvania is governed by a race notice recording system.

Pursuant to the priority rules of the race notice recording system, Judge Wizmer concluded that "the Citizens Bank mortgage, recorded before the debtor gained bona fide purchaser status at the time of the bankruptcy filing, has priority over the debtor's

7

claim." (Id. at 14). This Court finds no error in Judge Wizmer's application of the race notice priority rules to the facts of this case. Because Citizens' mortgage was recorded before the Debtor filed for bankruptcy, this Court agrees with the Bankruptcy Court that Citizens' mortgage has priority over the Debtor's claim pursuant to § 351.

**Remaining Effect of § 444**

Citizens argues that the return to a race notice system under § 351 was "intended by the Legislature to nullify the ninety day grace period" found in § 444. (Citizens Opp. at 23). However, despite its conclusion that Pennsylvania returned to a race notice system, the Bankruptcy Court declined to rule that § 351 repealed § 444. Indeed, Judge Wizmer noted that,

> [t]here is ... no explicit expression in the statutory language or in the legislative note identifying section 444 as one of the sections that the act was intended to repeal, and both section 351 and 444 cross-reference each other, implying that section 444 was not repealed. As well, Pennsylvania cases have impliedly held that section 444 was not repealed by noting that sections 351 and 444 must be read together.

(Id. at 12, n. 7). Like Judge Wizmer, this Court is reticent to accept Citizen's nullification argument. While there appears to be some conflict between § 444 and § 351, there is also conflict among the courts as to whether § 444 continues to have any effect. See, e.g., Purcell, 798 F. Supp. at 1115, n.6 (listing conflicting decisions as to the validity of § 444).

8

The Debtor argues that § 444 remains in effect despite the savings clause of § 351 because the two statutes can and should be read together.  Specifically, the Debtor now asserts, for the first time on appeal, that the savings clause of § 351 "comes into play **only if** two deeds for the same property are not recorded within the prescribed time period contemplated under the relevant statutory directive and one of those two deeds is subsequently recorded by a grantee."  (Debtor Br. at 17).  To support this argument, the Debtor quotes and cites several early Pennsylvania cases discussing the original form of § 444, which contained a savings clause: Collins v. Aaron, 162 Pa. 539 (1894), Berg v. Shipley, 1 Grant 429, 430 (Pa. 1857), Mott v. Clark, 9 Pa. 399, 405 (1848), and Ebner v. Goundie, 5 Watts & Serg. 49, 51 (Pa. 1842).

For example, the Debtor cites the following excerpt from Collins, describing the effect of the savings clause in the original version of § 444:

> This section of the act has early met the interpretation from our appellate court, that where two deeds are made, of different dates, from the same grantor to different persons, neither of which is recorded within six months, that which is first recorded will take priority.  Manufacturing Co. v. Neel, 54 Pa. 19.

(Debtor Brief at 16 (quoting Collins, 162 Pa. at 539)).  However, this Court finds that the Debtor has read too much into this statement and taken it out of context.  Indeed, the very next few sentences in Collins provide,

9

> In that case [Mfg. Co. v. Neel] THOMPSON, J. said: "The plain reading of the act is, that <u>in order to be first in right against a prior purchaser's deed, the subsequent purchasers must be first in time on the record</u>." And in Souder v. Morrow, therein cited, LOWRIE, J. says: "Purchasers ought to know that they have only a conditional title dependent on the honesty of their vendors, so long as they neglect to record their deeds. <u>They are not safe, merely because of the neglect of a former purchaser to record within six months</u>, and there being no subsequent deed to oppose them, but because among several deceived purchasers they are first to obey the law."

Collins, 162 Pa. at 539 (emphasis added).

Thus, contrary to the Debtor's assertion, the Collins decision does not limit the application of the savings clause to only those situations in which neither conveyance is recorded within the statutory time period (which, in 1894, was six months). Rather, as Citizens argues, the opposite is true – "[t]he plain reading of the act is, that in order to be first in right against a prior purchaser's deed, the subsequent purchasers must be first in time on the record." Id.

The Debtor also relies on the following excerpt from Southwestern Nat'l Bank v. Riegner, 9 Pa. D. & C. 535, 537 (Pa. C.P. 1927):

> [i]t is only when by the delay of both parties two deeds are both outside of the term that it becomes a race between them which shall get on record first. That is the effect of all our cases. ... It is a construction in accordance with the spirit of all our recording acts against the extension of secret liens. ...

(See Debtor Br. at 16). As the Debtor notes, however, this excerpt is actually a quote from the dissent in the Pennsylvania

10

Supreme Court's landmark decision of Fries v. Null, 154 Pa. 573 (1893). In Fries, an owner granted a mortgage that was not recorded until six months and two days after its execution. At the time, the relevant recording statute required conveyances to be recorded within six months, but also contained a savings clause. Four days after granting the mortgage, the owner granted a deed to a third party, who recorded the deed within the six month statutory period, but one day after the mortgage was recorded. The Pennsylvania Supreme Court held that even though the mortgage was recorded outside the six month period and the deed was recorded within the six month period, under the savings clause, the mortgage still had priority over the deed because it was recorded before the deed.

In rendering its opinion in Fries, the Pennsylvania Supreme Court explicitly rejected the very same argument now made by the Debtor:

> It is argued for the appellee [owner of the deed] that both parties must be in default for the whole period of six months before the language of the statute becomes applicable in favor of the priority of the mortgage. Why? The words of the statute do not say so. This court has never so decided. Apparently the words of the act mean precisely the opposite of this contention. They are as follows: "And every such deed and conveyance ... which shall not be proved and recorded as aforesaid, [i.e., within six months after execution,] shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for valuable consideration, unless such deed or conveyance be recorded, as aforesaid, before the proving and recording of the deed or conveyance under which such subsequent purchaser or mortgagee shall claim." ... There is but one reading of this language. The penalty

>   of postponement is not incurred if (1) either the
>   mortgage is recorded at any time within six months from
>   its execution, or (2) if it is actually recorded before
>   the deed is recorded. ... <u>[The law] does not say that
>   its words are to apply only when both parties have been
>   derelict for the whole period of six months, and if we
>   undertake to say so we must put words in the statute
>   which are not there now, and this we cannot do</u>.
>   ...
>   Thus, in <u>Souder v. Morrow</u>, 33 Pa. St. 83, it is true
>   that both parties were in default beyond the six
>   months, but the decision of this court was not put upon
>   that consideration. ...<u>the decision gave preference to
>   the first conveyance, not because both were in default
>   more than six months, but because it was first
>   recorded</u>. ...<u>it is the first recording that gives the
>   preference, and gives it without any distinction as to
>   a joint dereliction of the same kind by both</u>.

<u>Fries</u>, 154 Pa. at 577-80.

The <u>Fries</u> decision makes clear that the application of the savings clause is not limited to only those situations in which both parties have recorded outside the statutory period. Given the explanation of the majority in <u>Fries</u>, this Court is not persuaded by the Debtor's reliance on the dissenting opinion. Nor is the Court persuaded by the other early Pennsylvania cases cited by the Debtor, as none of them holds that the application of the savings clause **only** applies when both parties fail to record within their respective 90 day periods. Rather, these cases simply involved facts where neither conveyance was timely recorded, and the Debtor cannot stretch a mere recital of facts into a holding. Thus, this Court rejects the Debtor's argument concerning the limited application of the savings clause.

In further support of its argument that § 444 remains in

12

effect, the Debtor also cites a number of recent decisions in which federal courts have held that the failure to record a mortgage within the 90 day period renders the mortgage void. See In re Fisher, 320 B.R. 52, 65 (E.D. Pa. 2005) ("[f]ailure to record the mortgage within the time period renders the mortgage void and allows such a mortgage to be avoided by the trustee in a bankruptcy action"); United States v. Craig, 936 F. Supp. 298 (E.D. Pa. 1996) (finding deed recorded 9 months after execution void as against tax assessments); Raimo v. United States, 1987 WL 28361 (E.D. Pa. 1987) (finding deed recorded 3 years later void as to intervening tax assessments); United States v. Jacono, 2006 WL 560142 (E.D. Pa. 2006) (finding insufficient evidence that mortgagee had constructive notice of prior unrecorded deed).

The Bankruptcy Court found that the Debtor's reliance on Fisher, Craig, and Raimo was not persuasive because these cases "make no attempt to address the impact of subsequently enacted 21 P.S. § 351 or the Pennsylvania cases cited [earlier], and are not precedential on the application of sections 351 and 444 to these facts." (Bankr. Op. at 16). Furthermore, Judge Wizmer determined that "the Jacono decision does not support the Debtor's position" but, instead, confirms the Bankruptcy Court's conclusion that constructive notice of a prior conveyance prevents a subsequent purchaser from asserting priority. (Id. at 17).

This Court agrees with the conclusions of the Bankruptcy

13

Court.  None of decisions in Fisher, Craig, or Raimo discusses the interplay of § 351 and § 444.  Indeed, the Fisher decision does not even mention § 351, which obviously raises the question of whether the court even considered it.  The decisions in Craig and Raimo at least cite to § 351, but they do so incorrectly, as they recount the 90 day requirement of § 444 and then attribute it to both §§ 351 and 444.  See Craig, 936 F. Supp. at 300; Raimo, 1987 WL 28361 at *1.  As to Jacono, the court's discussion of constructive notice implied that an unrecorded deed could still obtain priority over a subsequent recorded mortgage if the mortgagee had constructive notice of the deed.  In other words, failure to adhere to the 90 day requirement would not be dispositive of the deed's priority.  Thus, this Court agrees with Judge Wizmer that the Jacono decision is contrary to the Debtor's position.

As discussed above, the Court has rejected Citizen's nullification argument as well as the Debtor's interpretation of the savings clause and the Debtor's cited authorities that apply the 90 day requirement.  This leaves unresolved the question of whether and to what extent § 444 remains in effect.  Perhaps the Fries Court's interpretation offers the appropriate resolution – i.e., that the "penalty of postponement is not incurred if either (1) the [first conveyance] is recorded at any time within [90 days] from its execution, or (2) if it is actually recorded before the [second conveyance] is recorded."  Fries, 154 Pa. at

14

578.

However, the Court need not determine whether § 351 actually repealed § 444 because the result would be the same under either statute.  While § 351 provides an express notice exception (i.e., that all unrecorded deeds are void as to any subsequent bona fide purchaser <u>without actual or constructive notice</u>), "the Pennsylvania Supreme Court has found the notice exception to be implicit in Section 444[,]" as well.  <u>Purcell</u>, 798 F. Supp. at 1115 (citing <u>Smith v. Miller</u>, 296 Pa. 340, 344 (1929)).  Indeed, as Judge Wizmer explained, "[m]any Pennsylvania cases have found an implicit exception to the section 444 consequences ... where the purchaser has actual or constructive notice of the interest at the time of the purchase."  (Bankr. Opinion at 14 (citing <u>Smith v. Miller</u>, 296 Pa. at 344; <u>Overly v. Hixson</u>, 82 A.2d 573, 575 (Pa. Super. Ct. 1951); <u>Commonwealth of Pennsylvania, Pa. Games Com'n v. Ulrich</u>, 565 A.2d 859 (Pa. Commw. 1989))).

The Debtor argues that Citizen's "untimely" recording of its mortgage cannot constitute constructive notice, citing <u>Phillips v. Resolution Trust Corp.</u>, 1995 WL 230993 (E.D. Pa. 1995) and <u>Holler v. Fairbanks Capital Corp. Serv. Ctr. (In re Holler)</u>, 342 B.R. 212, 229-230 (Bankr. W.D. Pa. 2006).  However, the Court finds that neither decision is applicable to the instant case.

In <u>Phillips</u>, the district court stated that "a mortgage with a defective acknowledgment is void, and therefore it cannot be notice to anyone."  <u>Phillips</u>, 1995 WL 230993 at *3.  As made

15

clear in this excerpt, however, Phillips involved a defective acknowledgment, which made the mortgage void by statute. See 21 Pa. Stat. Ann. § 621 (stating that no mortgage is valid unless acknowledge within a specified period of time). By contrast, this case does not involve a defective acknowledgment; rather, it concerns an allegedly untimely recording. Nothing in Phillips compels the conclusion that an untimely recording cannot constitute constructive notice.

In Holler, the bankruptcy court stated that "the failure to timely record the Assignment of Mortgage could impact the validity and/or priority of the mortgage as against subsequent purchasers or mortgagees for valid consideration." Holler, 342 B.R. at 229. Reading that sentence in context, however, it becomes clear that the "failure to timely record" referred to the bank's failure to record the assignment of mortgage before a judgment of foreclosure was entered. Stated differently, the recording was untimely not because it was done outside the statutory period, but because it was done after the foreclosure judgment was entered. Indeed, the court emphasized chronological priority, noting that "[p]riority of a mortgage is as of the date of recording." Id. at 229 (citing 21 P.S. § 622). Thus, Holler does not support the Debtor's argument that the Citizens mortgage, recorded outside of the 90 day statutory window but before the Debtor filed its bankruptcy petition, cannot serve as constructive notice.

16

Not only do the authorities cited by the Debtor fail to support its argument, but the very definition of "constructive notice" compels the opposite conclusion. Constructive notice "is provided [inter alia] by what appears in the appropriate indexes of the office of the Recorder of Deeds in the county where the property is located." In re Johnston, 333 B.R. 724, 733 (Bankr. W.D. Pa. 2005) (citing Lund v. Heinrich, 410 Pa. 341, 346 (1963)). In this case, the undisputed facts show that Citizens Bank recorded its mortgage on June 7, 2006, and the Debtor filed its bankruptcy petition on June 10, 2007, over a year later. Any potential purchaser who searched the title to the Property on June 10, 2007 would have discovered Citizen's recorded mortgage. Consequently, Citizen's recording constitutes constructive notice regardless of the fact that it was done outside the 90 day statutory period.

Because the Debtor had constructive notice of the mortgage at the time its claim arose, the mortgage would not be deemed void as to the Debtor under the implicit notice exception of § 444. Accordingly, even under § 444, Citizens mortgage is not void as to the Debtor.

**Hypothetical Bona Fide Purchaser under § 544**

Under § 544 of the Bankruptcy Code,

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of,

17

>     or may avoid any transfer of property of the debtor or
>     any obligation incurred by the debtor that is voidable
>     by-
>         ...
>         (3) a bona fide purchaser of real property ... from
>         the debtor, against whom applicable law permits such
>         transfer to be perfected, that obtains the status of
>         a bona fide purchaser and has perfected such
>         transfer at the time of the commencement of the
>         case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). In simplified terms, "[t]his provision empowers a trustee in bankruptcy to avoid an obligation of the debtor if the obligation would not have bound a bona fide purchaser at the time [the] debtor commenced his bankruptcy case." Johnston, 333 B.R. at 732 (citing McLean v. City of Philadelphia Water Revenue Bureau, 891 F.2d 474, 476 (3d Cir. 1989)). The issue for the Court is whether the Debtor's trustee (i.e., the Debtor himself)[1] holds the status of a hypothetical "bona fide purchaser" so as to allow him to exercise his powers to avoid the Citizens mortgage. See In re Wagner, 353 B.R. 106, 115 (Bankr. W.D. Pa. 2006).

Significantly, the scope of a trustee's "strong-arm powers" under § 544 "depends on the substantive law of the state in which the property is located at the time of the bankruptcy filing." Johnston, 333 B.R. at 732 (citing Midlantic Nat'l Bank v. Bridge (In re Bridge), 18 F.3d 195, 199 (3d Cir. 1994)). As explained by the Third Circuit,

---

[1] For the sake of simplicity, the Court will refer to the Debtor's trustee as the Debtor, since they are one and the same.

> the legislative history indicates Congress in enacting § 544(a)(3) "did not intend to transform the trustee into a 'super-priority' creditor, In re Elin, 20 B.R. 1012, 1018-19 (D.N.J. 1982) [citation omitted], or to grant the trustee "a substantial additional mantle of power not available to any actual [creditor or] subsequent purchaser [under state law]," McCannon v. Marston, 679 F.2d 13, 16-17 (3d Cir. 1982).

Bridge, 18 F.3d at 200. Accordingly, this Court must look to the law of Pennsylvania to determine whether the Debtor qualifies as a bona fide purchaser for purposes of § 544.

In Pennsylvania, in order to attain the status of a bona fide purchaser of real property, a "person or entity must acquire the property without actual or constructive notice of a prior interest in the property." Wagner, 353 B.R. at 115 (citations omitted). Thus, where a subsequent purchaser of real property has actual or constructive notice of the prior right of another in the property, he is "disqualified from obtaining the status of a bona fide purchaser." Johnston, 333 B.R. at 732-33 (citing Long John Silver's, Inc. v. Fiore, 255 Pa. Super 183, 189 (1978)).

Despite the confines of Pennsylvania law, § 544 requires that the trustee's "actual knowledge" be disregarded for purposes of determining whether he qualifies as a bona fide purchaser. See 11. U.S.C. § 544 (trustee assumes rights and powers "without regard to any knowledge of the trustee"). However, as the Bankruptcy Court found, this does not mean that the trustee's constructive knowledge should be disregarded. See McCannon, 679

19

F.2d at 16 (noting that the statutory "knowledge" does not equate with "notice"); Bridge, 18 F.3d at 204 (trustee has "status of a hypothetical bona fide purchaser who is deemed to have searched the title").

As discussed above, Citizen's recording on June 7, 2006 constitutes constructive notice because any potential purchaser who searched the title to the Property on June 10, 2007 would have discovered Citizen's recorded mortgage.  Because a hypothetical purchaser would have had constructive notice of the Citizens mortgage, the Debtor does not qualify as a hypothetical bona fide purchaser for purposes of § 544.  See Johnston, 333 B.R. at 733.  Accordingly, this Court finds that the Debtor cannot avoid the Citizens mortgage under § 544 of the Bankruptcy Code.

### III.  CONCLUSION

For the aforementioned reasons, this Court affirms the decision of the Bankruptcy Court.  An appropriate Order will issue this date.

Dated:  August 29, 2008        s/Renée Marie Bumb
                               RENÉE MARIE BUMB
                               UNITED STATES DISTRICT JUDGE